## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WILLIE HARRIS,

                     :

          Petitioner,                   Case No. 1:09-cv-299

                     :         Chief Judge Susan J. Dlott

     -vs-                        Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional
 Institution,

                     :

          Respondent.

---

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pursuant to 28 U.S.C. § 2254, is ripe for decision on the

merits.  Petitioner pleads the following claims:

> **Ground One:** Petitioner's constitutional right to due process of law and the protection against ex post facto law as guaranteed by the Due Process and Ex Post Facto Clauses of the United States Constitution were violated when the trial court imposed non-minimum, consecutive sentences.

> **Ground Two:** Petitioner was denied the effective assistance of trial and appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when [and] to the extent trial and appellate counsel failed to object to Petitioner's illegal sentence.

> **Ground Three:** The trial court's failure to suppress unreliable eyewitness identification violated Mr. Harris' right to due process under the Fifth and Fourteenth Amendments.

> **Ground Four:** Trial counsel was ineffective for failing to correctly object to the improper joinder of the charges against Mr. Harris and appellate counsel was ineffective for failure to raise trial counsel's ineffectiveness.

-1-

(Petition, Doc. No. 1.)

## Procedural History

Petitioner Harris was indicted by the Hamilton County Grand Jury on December 30, 2003, on four counts of aggravated robbery and five counts of robbery with each count carrying a one year and a three year firearm specification. The charges involved four separate incidents and were joined for trial despite Petitioner's motion to sever. A jury convicted Petitioner on all counts. The trial judge then merged the aggravated robbery and robbery counts, merged the firearm specifications, sentenced Petitioner to the maximum term of ten years for each aggravated robbery count and three years for each firearm specification, and ordered that the sentences be served consecutively, resulting in an aggregate sentence of fifty-two years.

On the first direct appeal, the sentenced was vacated for failure to advise of post-release control and failure to make the findings needed at the time to impose consecutive sentences. On remand, the same sentence was reimposed. On appeal to the Ohio Supreme Court, the case was remanded for resentencing in light of *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006). On appeal after resentencing, the conviction and sentence were affirmed by the Court of Appeals and the Ohio Supreme Court declined jurisdiction. Motions for a new trial and to reopen the appeal under Ohio R. App. P. 26(B) were unsuccessful, but raised issues no longer pressed in this case. Petitioner timely filed this case after exhausting his Ohio remedies.

## Analysis

-2-

### Ground One

In Ground One, Petitioner initially challenged the imposition of non-minimum, maximum, and consecutive sentences.  He has now withdrawn his claim as to the consecutive sentences in light of *Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009), but maintains his claim as it relates to non-minimum and as to maximum sentences.  Respondent concedes this Ground for Relief is preserved for merit review, i.e, not procedurally defaulted.

As Petitioner accurately states in his Traverse (Doc. No. 12, PageID 1950-1951), Ohio Senate Bill 2, as enacted in 1996, required that a sentencing judge make certain findings of fact before imposing more than a minimum sentence.  Additional different findings of fact were required before imposition of a maximum sentence.  In *Foster, supra,* the Ohio Supreme Court held that these provisions were unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004).  It proceeded to sever these requirements from Senate Bill 2 so that after *Foster* Ohio judges are permitted to impose any sentence up to the statutory maximum without making any findings.

As further noted in the Traverse, *Foster* has been applied retroactively to persons who were sentenced before it was handed down (February 27, 2006)(Doc. No. 12, PageID 1951).  Petitioner asserts that this retroactive application is unconstitutional because the "maximum sentences are significantly higher than those that were in effect during the time periods in which the alleged crimes occurred." (Traverse, Doc. No. 12, PageID 1952, citing *Rogers v. Tennessee*, 532 U.S. 451 (2001).)  Petitioner asserts that this retroactive application violates both the Ex Post Facto Clause (Article I, § 10) and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

The Ex Post Facto Clause of the Constitution does not apply to courts.  However, in *Bouie*

*v. City of Columbia*, 378 U.S. 347 (1964) the Supreme Court struck down as unconstitutional a new judicial construction of a trespass statute which applied it to persons who failed to leave a store after notice, as opposed to the prior construction, in which it applied only to those who received notice prior to entry. In *Bouie*, the South Carolina Supreme Court had, by a new interpretation of the trespass statute which it applied retrospectively, made to be criminal conduct which was innocent when it was done: remaining in a place of public accommodation after being asked to leave when one had had no notice before entering the store that one was unwanted. That is the most radically unfair sort of retrospective state action: criminalizing primary conduct when it is too late for the subject to conform his conduct to the prohibition.

However, in *Rogers v. Tennessee*, 532 U.S. 451 (2001), the Court distinguished *Bouie* and held that the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *Ex Post Facto* Clause. In *Rogers* the Tennessee Supreme Court, as an act of common-law lawmaking, (1) abolished the common-law rule that the death of an assault victim within a year and a day after the assault is a prerequisite to a homicide prosecution and (2) applied the abolition to uphold the murder conviction in that case where death occurred fifteen months after the assault. The United States Supreme Court upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. In *Rogers*, the Court described the situations to which it had applied *Bouie*:

> Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decisionmaking not by reference to the *ex post facto* categories set out in *Calder [v. Bull,* 3 Dall. 386, 1 L. Ed. 648 (1798)], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated. See, e.g., *United States v. Lanier*, 520 U.S. 259, 266, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997) ("Due process bars courts from applying

-4-

a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Marks v. United States*, 430 U.S. at 191-192 (Due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); *Rose v. Locke*, 423 U.S. 48, 53, 46 L. Ed. 2d 185, 96 S. Ct. 243 (1975) (per curiam) (upholding defendant's conviction under statute prohibiting "crimes against nature" because, unlike in *Bouie*, the defendant "[could] make no claim that [the statute] afforded no notice that his conduct might be within its scope"); *Douglas v. Buder*, 412 U.S. 430, 432, 37 L. Ed. 2d 52, 93 S. Ct. 2199 (1973) (per curiam) (trial court's construction of the term "arrest" as including a traffic citation, and application of that construction to defendant to revoke his probation, was unforeseeable and thus violated due process); *Rabe v. Washington*, 405 U.S. 313, 316, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972) (per curiam) (reversing conviction under state obscenity law because it did "not give fair notice" that the location of the allegedly obscene exhibition was a vital element of the offense).

532 U.S. at 460.

The criminal acts of which Petitioner was convicted were subject, on the day he committed them, to the maximum sentences he actually received. He cannot plausibly claim that, in committing them, he relied on the requirement for judicial factfinding in Senate Bill 2. There is, therefore, no unconstitutional retroactive effect on him of applying *State v. Foster* to his case. Moreover, this Court has consistently held that the Ohio Supreme Court's severance decision in *State v. Foster* is not unconstitutionally retroactive. *Smith v. Cook*, Case No. 3:08-cv-107 (S.D. Ohio Aug. 27, 2008)(Merz, M.J.); *Parker v. Warden*, 2008 WL 4547490, 2008 U.S. Dist. LEXIS 80509 (S.D. Ohio, Oct. 10, 2008)(Rice, J.); *Hooks v. Sheets*, 2008 U.S. Dist. LEXIS 77612 (S.D. Ohio Oct. 3, 2008)(Beckwith, C.J.); *Ruhlman v. Warden*, 2009 U.S. Dist. LEXIS 101820 (S.D. Ohio Nov. 2, 2009)(Beckwith, J.); *Mason v. Brunsman*, 2009 U.S. Dist. LEXIS 61459 (S.D. Ohio July 16, 2009)(Spiegel, J.). The Northern District of Ohio has reached the same conclusion. See, e.g.,

*Aquino v. Brunsman*, 2009 U.S. Dist. LEXIS 51830 (N.D. Ohio June 19, 2009)(Nugent, J.)  The Ohio Supreme Court has reached the same conclusion.   *State v. Elmore*, 122 Ohio St. 3d 472 (2009).

Petitioner's citation to *Miller v. Florida*, 482 U.S. 423, 430 (1987), is unavailing.  That case involved retroactive application of amendments to parole guidelines which were legislative in nature and thus the stricter Ex Post Facto Clause applied.  Furthermore, this Court's reasoning that the *Foster* remedy is not unconstitutionally retroactive does not depend on any asserted similarity to the remedy the United States Supreme Court adopted with respect to federal guideline sentencing in *United States v. Booker*, 543 U.S. 220 (2005), so Petitioner's argued distinction of *Booker* (PageID 1956-1958) requires no response.

Petitioner's *ex post facto* claim is without merit.

### Ground Two

Petitioner has withdrawn Ground Two (Traverse, Doc. No. 12, PageID 1950).

### Ground Three

In Ground Three, Petitioner asserts that the trial court failed to suppress eyewitness identifications which were unreliable.  Respondent concedes that this Ground for Relief is preserved for merit review.

The Supreme Court has recently elaborated on the standard of review of state court decisions

on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  529 U.S., at 404-405, 120 S.Ct. 1495.   A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  *Id..,* at 405-406, 120 S. Ct. 1495.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  *Id..,* at 407-408, 120 S.Ct. 1495.   The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id..,* at 409- 410, 120 S.Ct. 1495.  See also *Id..,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant

relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

In deciding this claim on the merits, the Hamilton County Court of Appeals held as follows:

[*P33] In his first assignment of error, Harris argues that the trial court should have suppressed all three identifications in the Norwood UDF robbery, as well as Stevens's identification in the Walgreens robbery, because they involved impermissibly suggestive procedures and were unreliable.

[*P34] "When a witness has been confronted with a suspect prior to trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances." [2] The defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must determine whether the identification, when viewed under the totality of the circumstances, is reliable despite the suggestive procedure. [3] But if the pretrial procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. [4]

FOOTNOTES
2 *State v. Beckham*, 2d Dist. No. 19544, 2003 Ohio 3837, at P10.
3 *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L. Ed. 2d 140; *State v. Garner* (1995), 74 Ohio St.3d 49, 61, 1995

Ohio 168, 656 N.E.2d 623.
4 *State v. Gomez*, 3rd Dist. No. 16-04-10, 2005 Ohio 1606, at P34.

[*P35] Harris contends that the photographic arrays that were shown to the witnesses in the Walgreens and Norwood UDF robberies were suggestive because the majority of the photographs depicted men who were too old to match the description provided by the witnesses to the robberies. We have examined the photographic arrays and cannot conclude that Harris's picture so stood out in the arrays as to suggest to witnesses that they should identify him as the perpetrator. The arrays, which were prepared by a computerized program, contained photographs that matched the descriptions provided by the witnesses to the robberies. Each of the arrays contained six pictures of African-American men of similar age and skin tone, with short hair, a mustache, and a goatee.

[*P36] Nor can we conclude that the procedures employed by the police were unnecessarily suggestive. Prior to viewing the arrays, each witness was advised that the person who had committed the robbery may or may not have been pictured in the arrays. Each witness separately reviewed the arrays, and at no time during their viewing of the arrays did the police suggest which photo to choose. While Harris makes much of the fact that Detective Shircliff covered up the forehead and chin on his photo before showing the array to Stevens, we cannot conclude that this procedure alone made Stevens more likely to choose Harris's photograph, particularly when Shircliff did not single out Harris's photograph, but rather covered up the forehead and chin on each photograph in the array. Because we cannot conclude that the photographic arrays and the manner in which they were presented to the witnesses were unduly suggestive, we need not inquire into the reliability of the witnesses' identifications. Consequently, we overrule Harris's first assignment of error.

*State v. Harris*, 2005 Ohio 6995, 2005 Ohio App. LEXIS 6320 (Ohio App. 1st Dist. Dec. 30, 2005).

The clearly established United States Supreme Court law on eyewitness identification is set forth in *Neil v. Biggers*, 409 U.S. 188 (1972).

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of

> certainty demonstrated by the witness at the confrontation, and the
> length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Petitioner's argument on this Ground for Relief (Traverse, Doc. No. 12, PageID 1959-1960) is a conclusory two paragraphs. It does not suggest that the Court of Appeals decision is contrary to or an objectively unreasonable application of *Manson* or *Biggers*. Ground Three is without merit.

## Ground Four

In Ground Four, Petitioner asserts two sub-claims: (1) he received ineffective assistance of trial counsel when his trial counsel did not correctly object to the improper joinder of offenses and (2) he received ineffective assistance of appellate counsel when his appellate attorney did not raised as an assignment of error his trial counsel's ineffectiveness.

## Procedural Default

Respondent asserts the Court's consideration of these claims on the merits is barred by Petitioner's procedural default in presenting them to the Ohio courts.  He notes that the ineffective assistance of trial counsel claim was never presented on direct appeal to the Hamilton County Court of Appeals and argues that failure to do so cannot be excused by a showing of ineffective assistance of appellate counsel because that claim was never presented to the Court of Appeals in an application for reopening under Ohio R. App. P. 26(B) (Return of Writ, Doc. No. 9, PageID 61-66.)

Petitioner rejoins that at the time he made his claim of ineffective assistance of appellate

-10-

counsel, he did it in the only way possible in the Hamilton County Court of Appeals, to wit, by including it in his appeal to the Ohio Supreme Court on direct appeal (Traverse, Doc. No. 12, PageID 1948).  He asserts that at the time of Mr. Harris' direct appeal, the Hamilton County Court of Appeals denied on *res judicata* grounds any Rule 26(B) application which raised a claim which could have been raised on direct appeal to the Ohio Supreme Court, citing *State v. White*, Hamilton App. No. C-040770 (Ohio App. 1st Dist. June 13, 2006)(unreported), and *State v. Davis*, Hamilton App. No. C-040665 (Ohio App. 1st Dist. January 8, 2007)(unreported).  Those cases stand clearly for the proposition for which they are cited; while they are unreported, the proposition in question finds further support in *State v. Houston*, 73 Ohio St. 3d 346, 652 N.E. 2d 1018 (1995).

Thus Petitioner's claim is that he raised his ineffective assistance of counsel claims in the only appropriate way, to wit, by including them in his direct appeal to the Ohio Supreme Court where he made the following argument on this point:

> **Proposition of Law No. IV: A pre-trial motion for relief from prejudicial joinder need not be "renewed" at the close of evidence**.
>
> No rule or decision of this Court requires that a pre-trial motion for relief from prejudicial joinder be renewed at the close of evidence. In addition to this case, Slip. Op. at ¶ 38, several appellate districts have cited this "rule." See,. e.g., *State v. Ouinones*, 11th Dist. No. 2003-L-OI5, 2005-Ohio-6576, at ¶29, *State v. DiCarlo*, 7th Dist. No. 02CA228, 2004-Ohio-5118, *State v. Owens* (9th App.1975), 51 Ohio App.2d 132. But the "rule" has no basis in rule, statute or logic.
>
> The invented rule makes no sense. Further, although the rule is frequently cited in the decisions of Ohio courts of appeals, counsel was unable to find a court that provided a rationale for the rule. Also, at the close of the State's case, the remedy would be a mistrial after jeopardy has attached. Whereas, if the defendant raised the issue on appeal, an appellate court could reverse the conviction and order a new trial.

> A court-made rule that results in the default of a claim should be
> promulgated only by the highest court or not at all. This Court should
> accept this case to set forth the Ohio standard for preserving motions
> for relief from prejudicial joinder under Crim.R. 12(C)(5) and 14.

(Memorandum in Support of Jurisdiction, Ex. 17 to Return of Writ, Doc. No. 9, PageID 267.)

One examines this text in vain for any hint of a claim of ineffective assistance of trial counsel for raising the joinder issue at the close of all the evidence or of ineffective assistance of appellate counsel for not making that claim on appeal.  Instead, Proposition of Law No. IV is a direct request to the Ohio Supreme Court to decide that the "rule" relied on by the Hamilton County Court of Appeals is a nonsensical "invented rule."

Thus Petitioner did not raise the claims of ineffective assistance of trial counsel or ineffective assistance of appellate counsel on direct appeal, the only way in which he could properly have done so.  Since these claims were never presented to the Ohio courts, they have been procedurally defaulted.

**Merits Analysis**

In the event the District Court does not adopt the foregoing recommendation on procedural default, the Magistrate Judge offers the following merits analysis in the alternative.

The Hamilton County Court of Appeals treated the issue of prejudicial joinder as procedurally defaulted by Petitioner's failure to renew his opposition to joinder at the close of all the evidence.  *State v. Harris*, 2005 Ohio 6995, 2005 Ohio App. LEXIS 6320, ¶ 38 (Ohio App. 1st Dist. Dec. 30, 2005).  It nonetheless reviewed the claim for plain error, which is not a waiver of the

default.[1]  On that review, it found no plain error:

> The evidence of each aggravated robbery was simple and distinct. 6 The record reveals that the state presented the evidence of each aggravated-robbery separately, in a chronological fashion. Each of the offenses, which involved the robbery of a convenience store, occurred on a separate date and time and involved separate witnesses. The witnesses' testimony regarding each of the robberies was straightforward and uncomplicated. Thus, we find it improbable that the jury would have confused the evidence or considered one victim's testimony as corroborating evidence relating to one of the other aggravated-robbery charges. Because Harris has not demonstrated that the joinder of the aggravated-robbery offenses affected the outcome of the trial, we overrule his second assignment of error.

*Id.*. at ¶ 39.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

---

[1] A state appellate court's review for plain error is enforcement, not waiver, of a procedural default.  *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3rd 239 (6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3rd 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218. The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

Petitioner's argument does not persuade this Court that he received either ineffective assistance of trial counsel or ineffective assistance of appellate counsel. In the first place, Ohio favors joinder of offenses in a single trial and review of a joinder decision is for abuse of discretion. *State v. Franklin*, 62 Ohio St. 3d 118, 580 N.E. 2d 1 (1991). Thus a motion to sever at the close of all the evidence was unlikely to have been granted, particularly where the same motion had been made and denied prior to trial. Under Ohio law where the evidence of each of the joined crimes is

-14-

simple and direct, as the Court of Appeals found it to be here, the State does not have to satisfy the stricter "other acts" test for joinder, under which the evidence of separate crimes would be admissible under Ohio R. Evid. 404(B).  *Id.*. Thus Petitioner's argument about the "other acts" impact of the evidence of separate crimes is beside the point, at least in the absence of some claim that the joinder here would have been unconstitutional.  No such claim has been made either here or in the state courts.  The prosecutor was able to satisfy the "simple and direct" evidence test in defeating the pre-trial severance motion.  There is simply no evidence that a post-evidence motion would have been successful.  It cannot be ineffective assistance of trial counsel to fail to present a motion which would very likely have been denied.  It cannot be ineffective assistance of appellate counsel to raise an assignment of error of ineffective assistance of trial counsel under those circumstances.

Ground Four is without merit as well as procedurally defaulted.

## Conclusion

The Petition should be dismissed with prejudice.  Because reasonable jurists would not

-15-

disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

June 30, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Documents\Harris habeas Merits R&R.wpd

-16-